**United States District Court**
**Southern District of New York**

Lauren Weingarten,               :

                              :

          Plaintiff,          :

                              :

          vs.              :       Civil Action No. 1:20-cv-02598-LTS-KNF

                              :

CBS and Matt DeRoss,       :

                              :

          Defendant.       :

## Amended Complaint

      Plaintiff, Lauren Weingarten, brings a series of claims against defendants, CBS and Matt DeRoss, of which the following is a statement:

## Jurisdiction and Venue

1.      This case concerns the failure of defendant CBS to create, foster and promote a work environment in which its female employees are not subjected to discrimination, harassment and intimidation because of their gender, and in which its management employees respect and protect the right of female employees to be free from discrimination, harassment and intimidation because of their gender.

2.      This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred here.

## Parties

4.     Plaintiff, Lauren Weingarten, is a citizen and resident of the State of North Carolina.

5.     Defendant CBS is a commercial broadcast television and radio network subsidiary of CBS Corporation, a Delaware corporation and the surviving company of the December 2019 merger of Viacom Inc., a Delaware corporation, with and into CBS Corporation.  CBS's principal place of business is located at 51 West 52nd Street, New York NY 10019.

6.     Defendant Matt DeRoss is a citizen and resident of the State of California.

7.     With respect to defendant CBS, the acts set forth in this Complaint were authorized, ordered, condoned and/or done by CBS's officers, agents, employees and/or representatives while actively engaged in the management of CBS's business.

## Background Facts

8.     Prior to the incidents that give rise to the claims asserted in this Complaint, Ms. Weingarten had a successful 12-year career as a production assistant, production coordinator, location manager, director's assistant, property master and production supervisor in the television, film and commercial industry.

9.     On or about January 8, 2018, Ms. Weingarten began working for CBS as the Assistant to Craig Zobel on the CBS All Access 10-episode mystery-thriller series, One Dollar. Mr. Zobel was an Executive Producer of One Dollar and directed all of the episodes.  Mr. DeRoss was also an Executive Producer and worked closely with Mr. Zobel and the actors and creative personnel.  Ms. Weingarten did not directly report to Mr. DeRoss, but as an Executive Producer of the series, he was frequently on set.  Because of his status as an Executive Producer,

Mr. DeRoss was Ms. Weingarten's superior.  One Dollar was produced in Pittsburgh,

Pennsylvania, Ms. Weingarten's home at the time.

10.     At the end of February 2018 and continuing thereafter, Ms. Weingarten began to

experience abuse from Scottie Gissel, an Assistant Director on the series.  She was verbally

abusive to Ms. Weingarten in the presence of crew members, threatened Ms. Weingarten's

employment, commented on Ms. Weingarten's appearance, stating that she could not rely on her

good looks forever, and was bothered by Mr. Zobel's reliance on Ms. Weingarten to do

substantive production work.  Ms. Gissel also was abusive to other crew members.  She regularly

berated crew members to such an extent that they would cry.  Ms. Gissel also made negative

comments to certain female crew members that wearing shorts or leggings to work was

distracting, apparently to male employees.  On another occasion, another management level

employee commented to Ms. Weingarten sarcastically, "nice shorts".

11.     As a regular part of her duties, Ms. Weingarten interacted with Ms. Gissel on a

daily basis.

12.     In March 2018, Ms. Weingarten reported Ms. Gissel's abuse to Jonathan Starch,

the Line Producer on the series.  Rather than convey Ms. Weingarten's complaint to CBS's

Human Resources Department, as he was required to do by CBS policy, Mr. Starch told Ms.

Weingarten to "sweep it under the rug" and not to "ruffle feathers."

13.     Despite Mr. Starch's rejection of her complaint, Ms. Weingarten continued to

perform her job duties at a high level.  She worked closely with the actors, handled script

approval and distribution, and facilitated creative requests from the actors to her supervisor and

other Executive Producers.  She handled all of Mr. Zobel's scheduling for prep, shooting and

post-production , prepared shot lists for each day of shooting based on his notes, was the point

person for all other department heads, worked closely with the CBS Clearance Department and Script Coordinator, and handled Mr. Zobel's scheduling for future work.  She also broke down script drafts and tracked the estimated future cast and location needs for production and network to produce appropriate deals.  She was routinely referred to by cast and crew as the "MVP" of the series.  Her performance was so outstanding that on or about March 23, 2018, Mr. Zobel asked her to work with him on his next project.  Ms. Weingarten accepted the offer and looked forward to the work, because One Dollar was scheduled to complete principal photography in October 2018 and she had not arranged for any subsequent employment.

14.     However, on or about May 4, 2018, Mr. DeRoss began to harass Ms. Weingarten. His harassment was pervasive and varied, including constant berating, verbal and behavioral intimidation, chastising her for trying to report bullying, expressing a lack of trust in her, alienating her from her peers and pressuring her to break the confidence of her peers.  Mr. DeRoss also frequently directed menacing glances and numerous snide comments toward Ms. Weingarten.  Ms. Weingarten complained to Mr. DeRoss about Ms. Gissel's bullying, and told him that in February Ms. Gissel had called her fake and insincere.  When Ms. Weingarten made a joke about having low self-esteem, Mr. DeRoss berated her, and told her she could never be a producer.  Mr. DeRoss also blamed her for production issues.  Mr. DeRoss later admitted he had begun not to like her early on and had compartmentalized her with stress.  He also began to take work responsibilities away from Ms. Weingarten and literally stepped on her when she was picking up the contents of her dropped bag to catch up with a young crew member.

15.     A few days after May 4, 2018, Ms. Weingarten reported to Mr. Starch that Mr. DeRoss was harassing and bullying her.  Mr. Starch told Ms. Weingarten he would convey her complaint to CBS's Human Resources Department, but he failed to do so.

16.     Mr. DeRoss's actions, and the failure of other responsible managers on set to abide by CBS and industry policy regarding sexual harassment, created an abusive and hostile work environment for female employees.  For example, the CBS Non-Discrimination and Anti-Harassment Policy of March 2016 provides:

> CBS is committed to a work environment in which all individuals are treated with respect and dignity.  Each individual has the right to work in a professional atmosphere that promotes equal employment opportunities and prohibits discriminatory practices, including harassment.  Therefore, CBS expects that all relationships among persons in the workplace will be business-like and free of bias, prejudice and harassment.

The policy applies to all CBS employees, and prohibits harassment and discrimination whether engaged in by fellow employees, by a supervisor or manager or by someone not directly connected to CBS, such as an outside vendor, consultant or customer.  An individual who believes they have experienced conduct contrary to the policy is strongly urged to report their complaints to a variety of persons, including their immediate supervisor, their department head, or any senior manager of the business unit.  Reported allegations of harassment, discrimination or retaliation are to be investigated "promptly, thoroughly and impartially."  In the event the investigation establishes that harassment, discrimination or retaliation occurred, discipline, up to and including termination, can be imposed.   The policy also requires supervisors who receive a complaint of a violation of the policy to promptly report it to their local Human Resources representative, CBS Human Resources Department or to the CBS Compliance Officer.  The 2016 CBS Corporation Business Conduct Statement also prohibits discrimination, sexual harassment and retaliation, but goes a step further:

> CBS also believes in an environment that is free from workplace bullying and abusive conduct, regardless of whether the person is in a protected category.  Bullying or abusive conduct is conduct with malice that a reasonable person would find hostile or offensive.  Examples of what constitutes abusive or bullying conduct includes repeated use of insults,

derogatory remarks and epithets; threatening, intimidating or humiliating verbal or physical conduct; and the gratuitous sabotage of a person's work performance.

In addition, under the Statement employees are required to report promptly to their immediate supervisor, department head or Human Resources Representative any violation or suspected violation of any rule or policy in the Statement of which they become aware.  In fact, failure to report a violation could result in disciplinary action, including possible termination.  The Producers Guild of America Anti-Sexual Harassment Guidelines dated January 19, 2018, recommend that each production provide in-person anti-sexual harassment training for all members of the cast and crew, that each production continue to be vigilant in efforts to prevent sexual harassment during the production process, that each production offer reporting procedures that provide a range of methods and multiple points-of-contact (such as designating at least two (2) individuals, ideally of different genders, that cast/crew members can approach if they are subject to or witness harassment), and that reports of harassment are listened to with attention and empathy.  And the SAG-AFTRA Code of Conduct on Sexual Harassment, which applies to its members as well as their employers, expressly states that they expect their members will refrain from engaging in harassing conduct.  The Code also indicates that employers are responsible for preventing sexually harassing conduct by any of their employees, including those who are SAG-AFTRA members.

17.     On March 20, 2018, Mr. Starch sent a memorandum to all crew members stating that they were required to attend a live one-hour mandatory CBS Anti-harassment/Anti-discrimination Training on March 26 or 27.   Department heads and Supervisors, including Mr. DeRoss, Mr. Zobel, Mr. Alexandre Dauman, Mr. Starch, Ms. Sophia Lin and Ms. Gissel, were required to complete a second hour online.

18.     The anti-harassment training proved to be ineffectual.  Later that day, while walking around the studio Ms. Weingarten stumbled and a male crew member said, "I wish you were naked and I would've caught you when you fell."  That same day, another male crew member, while holding a Hershey kiss in his hand, said to Ms. Weingarten in a seductive tone, "can I give you a kiss?"  A few days later, Ms. Weingarten reported these incidents to Mr. Zobel, who in turn informed Ms. Lin about them.  Neither Mr. Zobel nor Ms. Lin reported the incidents to CBS's Human Resources Department.

19.     Ms. Weingarten attempted to report the harassment she had been experiencing to Mr. Zobel.  He told her that he did not have time to deal with those concerns.  Strangely, Mr. DeRoss was upset with Ms. Weingarten for bringing her harassment concerns to Mr. Zobel, her immediate supervisor.

20.     Ms. Weingarten reported the harassment and abuse she had been experiencing from Ms. Gissel to Mr. DeRoss.  He told her that the harassment had occurred too long ago to be remedied, and that she should "keep quiet and mind [her] business."

21.     Beginning in February 2018, Ms. Weingarten reported the numerous incidents of harassment and bullying she experienced to a colleague in a supervisory role.  At that time, the production supervisor never conveyed any of Ms. Weingarten's complaints to CBS's Human Resources Department.

22.     Series production was on hiatus for actors and the shooting crew from May 24, 2018 through June 4, 2018.  Ms. Weingarten, however, continued to work on the production.

23.     On May 26, 2018, after an evening out with members of the crew and Nathaniel Martello-White, the lead actor on the series, Mr. Martello-White raped and sodomized Ms. Weingarten.[1]

24.     The failure of the responsible management officials to comply, and ensure compliance, with CBS policy, including the failure of CBS to require the series actors to take sexual harassment training, the failure to include in the series actors' contracts an anti-fraterinization provision (in contrast, CBS makes clear that supervisors may not date their subordinates), the abusive and hostile work environment created, fostered and condoned by Mr. DeRoss and others, and management's failure to timely and adequately respond to Ms. Weingarten's complaints of harassment, likely created an environment surrounding production of the series that may have led to Ms. Weingarten's rape.

25.     On June 7, 2018, in part because of interacting with Mr. Martello-White for the first time after the rape, Ms. Weingarten experienced severe stomach pain to such an extent that she went to a University of Pittsburgh Medical Center Emergency Room.

26.     On June 14, 2018, Sophia Lin, the Unit Production Manager and the person to whom Ms. Weingarten was required to report complaints, in the presence of the cast and crew, loudly verbally chastised Ms. Weingarten for making complaints about bullying and harassment. Ms. Lin told Ms. Weingarten there were no bullies on set and continually screamed at her.  Mr. DeRoss and others witnessed Ms. Lin's screaming and inappropriate conduct towards Ms. Weingarten.

27.     After the confrontation with Ms. Lin, Mr. Starch, Mr. Alexandre Dauman and Mr. DeRoss criticized Ms. Lin's actions and indicated they were supportive of how Ms. Weingarten

_____

[1] Ms. Weingarten reported the rape to the Pittsburgh Police Department and an investigation is underway.

handled the situation.  Nevertheless, all of them encouraged Ms. Weingarten not to report the incident to Mr. Zobel.

28.     Also, after the incident with Ms. Lin, a female crew member told Ms. Weingarten she had complained to Mr. DeRoss about Ms. Gissel as well and that, in response, Mr. DeRoss told the female crew member that because she was so important to the production, he would do whatever it took not to lose her.

29.     However, the next day, when Ms. Weingarten brought up the incident with Ms. Lin, Mr. DeRoss told Ms. Weingarten he could not handle the negativity and stress, and left to sit in his Director's chair and read poetry.

30.     On June 15, 2018, Mr. Starch sent Ms. Weingarten a text message stating she needed to contact Human Resources herself, and that she was on her own.  The same day, Mr. Dauman reiterated to Ms. Weingarten that she needed to contact Human Resources.  Ms. Weingarten reported Ms. Lin's conduct to the CBS Human Resources Department in New York, and was assured that she had done nothing wrong in connection with the incident involving Ms. Lin.

31.     On June 18, 2018, Ms. Weingarten spoke with Marlene Baez, an employee working in CBS's Human Resources Department in New York, about the incident with Ms. Lin and the bullying she was subjected to by Ms. Gissel.  Ms. Baez did nothing in response to this information, other than to tell Ms. Weingarten that she was not at fault.

32.     On June 19, 2018, Mr. DeRoss confronted Ms. Weingarten in an extremely hostile manner, belittling and taunting her.  Ms. Weingarten, who at the time was under extreme psychological pressure,  medical distress (two days before scheduled surgery) and suffering from trauma as a result of the rape, told Mr. DeRoss that she wanted to die.  Mr. DeRoss laughed, and

told Ms. Weingarten she was crazy.  In response, Ms. Weingarten told Mr. DeRoss to "go fuck yourself."

33.     Immediately thereafter, Ms. Weingarten reported the confrontation with Mr. DeRoss to Mr. Starch.  While making the report, Mr. DeRoss approached Ms. Weingarten and Mr. Starch.  Mr. Starch attempted to mediate the situation between Mr. DeRoss and Ms. Weingarten.  During that conversation, Mr. DeRoss told Ms. Weingarten and Mr. Starch that he flirted with women in their twenties to relieve stress.  He specifically stated that he liked to flirt with a particular female crew member to relieve his stress.  Mr. DeRoss also referenced other female crew members, told Ms. Weingarten that there was a difference between her and them, and accused Ms. Weingarten of wanting him to flirt with her.

34.     Later that evening, Ms. Weingarten told Mr. Starch that she was afraid to return to work.  Mr. Starch made clear to Ms. Weingarten that he did not want to continue to deal with the situation, and told Ms. Weingarten, "go see a therapist."  He also stated in a text message that Ms. Weingarten would not be fired.

35.     That same day and the following day, Ms. Weingarten called CBS's Human Resources Department in New York six times and left messages after each call stating that she wanted to speak with someone about the confrontation with Mr. DeRoss.  Ms. Weingarten was extremely concerned about retaliation from Mr. DeRoss.

36.     On June 20, 2018, Ms. Weingarten was sent home from work.  Later that day, she spoke by telephone with Marlene Baez of CBS's Human Resources Department in New York about the incident with Mr. DeRoss.

37.     Ms. Baez told Ms. Weingarten that she would conduct a thorough investigation of the incident.  In truth, however, Ms. Baez's investigation was a sham.  Ms. Weingarten learned

that witnesses who could corroborate the harassment and bullying she reported had their

employment threatened, were required to sign Non-Disclosure Agreements, and were prohibited

from speaking with her.  In fact, at least two witnessess also reported that Mr. DeRoss made

them uncomfortable and that they had witnessed other harassment from him directed towards

others.

38.     On June 21, 2018, Ms. Weingarten underwent previously-scheduled surgery.

39.     Later that day, as a result of the trauma she was experiencing because of the rape

and the harassing and abusive environment on set, Ms. Weingarten attempted suicide by

overdosing on the drug, Klonopin, which is used to treat panic disorder in adults.  She was

hospitalized until June 26, 2018 because of the suicide attempt.

40.     On June 28, 2018, CBS terminated Ms. Weingarten's employment.  On July 30,

2018, Ms. Weingarten received a termination letter from CBS.

41.     Upon the completion of Principal Photography, Post-production work (including

editing, etc.) on the One Dollar Series took place in New York.  On information and belief, Mr.

DeRoss participated in post-production work on the One Dollar Series in New York and

California.  Had Ms. Weingarten not been terminated, she would have participated in New York

in post-production work on the One Dollar Series.

42.     Subsequent to her termination, Ms. Weingarten learned that Mr. DeRoss told the

series cast and crew that Ms. Weingarten had been fired because she went crazy and was upset

that he did not want to have sex with her.  Those statements were false.

43.     Mr. DeRoss made those false statements of fact about Ms. Weingarten to others in

the television, film and commercial industry in order to punish her for complaining to CBS's

Human Resources Department and others about his conduct, to cause Ms. Weingarten professional harm and to damage her career.

44.     Ms. Weingarten would have realized in the future the economic advantage of working in the television, film and commercial industry, including working with Mr. Zobel on his future projects, such as The Hunt, but for Mr. DeRoss's malicious interference through his actions and words.

45.     Mr. DeRoss acted with oppression, fraud and/or malice and engaged in highly reprehensible and despicable conduct.

46.     Sometime after June 28, 2018 and prior to November 27, 2018, a co-worker on the One Dollar series notified CBS that Ms. Weingarten had been raped while she was working on the series.

47.     That same day, CBS's Investigation Department called Ms. Weingarten about the rape report made by the co-worker.

48.     On November 28, 2018, Ms. Weingarten's attorney at the time contacted CBS in response to the CBS Investigation Department call to her.

49.     Ms. Weingarten's attorney expressed to CBS that although Ms. Weingarten was not working with CBS at the time of the call, she feared for her general personal safety, and she was concerned about retaliation arising from the report of the rape and the detrimental effect it would have on her career in the film, television and commercial industry.  CBS stated that it would send Ms. Weingarten's attorney a list of questions for her to answer as part of the investigation of the report of the rape.

50.     At the time, CBS did not disclose the identity of the person who had notified it of the rape.

51.     On January 3, 2019, Ms. Weingarten's attorney received the list of questions CBS had stated it would send him the preceding November.  Based on the substance of the questions, it was apparent to Ms. Weingarten that CBS did not take seriously the report of the rape and did not intend to conduct a serious investigation, in part because the majority of the questions concerned her relationship with the co-worker who made the report.

52.     Ms. Weingarten has suffered, is now suffering and will continue to suffer emotional distress, mental anguish, loss of enjoyment of life and other non-pecuniary losses as a direct and proximate result of defendants' actions and omissions, including sleep disturbances (including sleeplessness and insomnia), anxiety, agitation, restlessness, nightmares, fatigue, exhaustion, impaired concentration, urinary and bowel issues, migrane headaches and skin rashes.

53.     By reason of defendants' actions and omissions, Ms. Weingarten suffered extreme harm, including loss of income and other employment benefits, loss of professional opportunities, embarrassment and humiliation.

54.     CBS and Mr. DeRoss acted and failed to act willfully, maliciously, intentionally and with reckless disregard for Ms. Weingarten's rights and well-being.

## Count I

### *Negligent Infliction of Emotional Distress*

### *(against CBS)*

55.     Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-54, inclusive, of this Complaint.

56.     CBS had a fiduciary duty toward Ms. Weingarten to ensure that her work environment did not subject women to discrimination, harassment or intimidation, endanger their

physical safety as a result thereof, or cause women to fear for their safety as a result thereof, all of which hold the potential of causing deep emotional harm in the event of a breach.

57.     CBS endangered Ms. Weingarten's physical and emotional well-being by failing to take the necessary steps described above to create a work environment free from sex discrimination, sexual harassment, sexual assault and the fear thereof.

58.     CBS had a duty to care for Ms. Weingarten's physical and emotional well-being.

59.     CBS negligently breached these duties it owed Ms. Weingarten, and her injuries resulted from a direct physical and emotional impact caused by said breach.

60.     As a direct and proximate result of CBS's breach of these duties, Ms. Weingarten feared for her physical safety and emotional security, and suffered the emotional distress and trauma, including the physical manifestations thereof, described above.

61.     It was reasonably foreseeable that CBS's actions and omissions described above would cause Ms. Weingarten and the average woman genuine and substantial emotional distress and mental harm, and the physical manifestations thereof.

62.     CBS's actions and omissions warrant an award of punitive damages.

<u>**Count II**</u>

***Intentional Infliction of Emotional Distress***

***(against CBS)***

63.     Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-62, inclusive, of this Complaint.

64.     CBS's conduct, in particular given its history, pattern and practice of failing to protect its female employees, was so outrageous in character and so extreme in degree as to go

beyond all possible bounds of decency, and appropriately can be regarded as atrocious and utterly intolerable in a civilized society.

65.     CBS's actions and omissions that constitute intentional infliction of emotional distress were of a continuous nature and involved a course of harassing, intimidating and demeaning conduct, culminating in CBS's January 3, 2019 communication to Ms. Weingarten's prior attorney described above.

66.     As a direct and proximate result of CBS's intentional infliction of emotional distress, Ms. Weingarten suffered the emotional distress and trauma described above.

67.     CBS's actions and omissions warrant an award of punitive damages.

## Count III

### Negligent Supervision and Retention

### (against CBS)

68.     Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-67, inclusive, of this Complaint.

69.     CBS on the one hand, and Mr. DeRoss and Mr. Martello-White on the other hand, were in an employer-employee relationship because, *inter alia*, CBS exercised control both over the results produced by them and over the means employed by them to achieve the results.

70.     CBS was under a duty to exercise reasonable care in the supervision and training of its employees with respect to the risk of harm posed to its employees, and particularly its female employees, which reasonably could result from a failure to ensure the creation and maintenance of a work environment free from discrimination, harassment and abuse.

71.     CBS knew and had reason to know it had the ability to control Mr. DeRoss with respect to his relations with direct and indirect subordinates that could result in discrimination,

harassment or abuse, and knew or had reason to know of the necessity and opportunity for exercising such control.  Specifically, CBS knew on its own accord and that it was known among the various producers on the One Dollar Series that Mr. DeRoss had a history of disrespecting his subordinates, being a difficult person to work with, being emotionally abusive to his subordinates and co-workers, and abusing his power over his subordinates and co-workers to such an extent that various Department Heads previously had complained to CBS about his conduct.

72.     CBS was under a duty to exercise reasonable care in the supervision and training of the actors who participated in CBS-funded and CBS-sponsored productions, such as One Dollar, with respect to the risk of harm posed to its employees, and particularly its female employees, which reasonably could result from a failure to ensure the creation and maintenance of a work environment free from discrimination, harassment and abuse.

73.     CBS knew and had reason to know it had the ability to control the actors who participated in CBS-funded and CBS-sponsored productions, such as One Dollar, with respect to their relations with CBS employees that could result in discrimination, harassment or abuse, and knew or had reason to know of the necessity and opportunity for exercising such control.

74.     CBS, through its acts and omissions, breached the duties described above that it owed to Ms. Weingarten.

75.     As a direct and proximate result of CBS's breach of duty, Ms. Weingarten incurred the damages described above.

76.     Ms. Weingarten was injured by Mr. DeRoss and Mr. Martello-White for purely personal reasons.

77.     CBS's conduct was malicious, wanton, willful, oppressive and exhibited a reckless indifference to Ms. Weingarten's rights.

### *Count IV*

### *Intentional Interference with Prospective Economic Advantage*

### *(against CBS and Matt DeRoss)*

78.     Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-77, inclusive, of this Complaint.

79.     Ms. Weingarten had an existing economic relationship with Mr. Zobel, and prospective work with him on "The Hunt."

80.     Mr. DeRoss knew of the existing and prospective economic relationship between Ms. Weingarten and Mr. Zobel.

81.     Mr. DeRoss intentionally and wrongfully interfered with this prospective, beneficial economic relationship through his actions towards and statements about Ms. Weingarten, both before and after her termination.  In doing so, Mr. DeRoss intended to disrupt Ms. Weingarten's prospective economic advantage or knew that his actions towards and statements about Ms. Weingarten were certain or substantially certain to achieve this result.

82.     Mr. DeRoss's actions were intentionally undertaken to inflict harm on Ms. Weingarten by impairing her work in her profession and business, and specifically interfering with her economic relationship with Mr. Zobel.

83.     Mr. DeRoss's actions toward and statements about Ms. Weingarten resulted in an actual disruption of the beneficial economic relationship referenced above.

84.     As a direct and proximate result of Mr. DeRoss's intentional interference with the aforementioned prospective economic relationship, and the other opportunities Ms. Weingarten

likely would have had to work on other projects in the film, television and commercial industry,

Ms. Weingarten has suffered (and will continue to suffer) actual, consequential and/or incidental

damages in an amount to be determined at trial.

### Jury Demand

85.     Ms. Weingarten demands a trial by jury as to all issues so triable.

### Prayer for Relief

Wherefore, Plaintiff, Lauren Weingarten, respectfully prays that the Court:

a.     adjudge, decree and declare that the actions and practices of defendants

complained of herein are violative of her rights under state law;

b.     order defendant CBS to provide appropriate job relief to Ms. Weingarten;

c.     enter judgment in favor of Ms. Weingarten and against defendants for all

available remedies and damages under law and equity;

d.     order defendants to pay the attorney's fees, costs, expenses and expert witness

fees of Ms. Weingarten associated with this case;

e.     grant such other and further legal and equitable relief as may be found appropriate

and as the Court mad deem just or equitable; and

f.     retain jurisdiction until such time as the Court is satisfied that defendants have

remedied the unlawful and illegal practices complained of herein and are determined to be in full

compliance with the law.

_s/Tyrone A. Blackburn_
Tyrone A. Blackburn
T.A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn NY 11236
Tel: 347 342 7432
TBlackburn@TABlackburnlaw.com

and

Robert T Vance Jr, _pro hac vice_
Law Offices of Robert T Vance Jr
100 South Broad Street,, Suite 1525
Philadelphia PA 19110
215 557 9550 tel / 215 278 7992 fax
rvance@vancelf.com

_Attorneys for Lauren Weingarten_
