UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAUREN WEINGARTEN

                    Plaintiff,

        v.

CBS and MATT DeROSS

                    Defendants.

Case No.: 1:20-cv-02598-LTS-KNF

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CBS'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Kevin B. Leblang, Esq.
Amelia B. Munger, Esq.
1177 Avenue of the Americas
New York, New York 10036
Phone: (212) 715-9100
Fax: 212-715-8000
kleblang@kramerlevin.com
amunger@kramerlevin.com

*Attorneys for Defendant CBS*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    PRELIMINARY STATEMENT ................................................................. 1

II.    FACTUAL BACKGROUND ................................................................... 2

III.    ARGUMENT ........................................................................................ 5

    A.    The Amended Complaint Should Be Dismissed for Improper Venue .................. 5

    B.    Plaintiff's State Law Claims Should Be Dismissed................................. 10

        1.    Plaintiff's Claims are Time Barred (Counts II and IV) .......................... 11

        2.    Plaintiff Does Not State a Claim Under Applicable Tort Law ................. 13

        3.    The Exclusivity Provision of Both New York's and Pennsylvania's Workers' Compensation Laws Precludes the Assertion of Many of Plaintiff's Claims ................................................................. 18

IV.    CONCLUSION ................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................10

*Assa Realty LLC v. Solution Grp. Corp.*,
  No. 17-cv-0177 (KBF), 2017 WL 2241524 (S.D.N.Y. May 22, 2017)....................................7

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983)..................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................10, 11

*Berlin v. JetBlue Airways Corp.*,
  436 F. Supp. 3d 550 (E.D.N.Y 2020) ..........................................................11

*Bryan v. Erie Cty. Office of Children & Youth*,
  861 F.Supp. 2d 553 (W.D. Pa. 2012) ..........................................................16

*Carvel Corp. v. Noonan*,
  350 F.3d 6 (2d Cir. 2003).........................................................................18

*Corrado v. N.Y. Unified Court System*,
  163 F. Supp. 3d 1 (E.D.N.Y 2016) ............................................................19

*Crivelli v. Gen. Motors Corp.*,
  215 F.3d 386 (3d Cir. 2000)......................................................................17

*D'Annunzio v. Ayken, Inc.*,
  25 F. Supp. 3d 281 (E.D.N.Y 2014) ...........................................................19

*Daniel v. Am Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 2005)........................................................................6

*Demas v. Levitsky*,
  291 A.D.2d 653 (3d Dep't 2002) ...............................................................13

*Doe v. Plum Borough Sch. Dist.*,
  No. 2:17-cv-00032, 2017 WL 3492542 (W.D. Pa. Aug. 15, 2017)........................16

*Fedele v. Harris*,
  18 F. Supp. 3d 309 (E.D.N.Y. 2014) ............................................................6

*Ferris v. Delta Air Lines, Inc.*,
   277 F.3d 128 (2d Cir. 2001)................................................................................18, 19

*Fieni v. Pocopson Home*,
   Civil Action No. 96-5343, 1997 WL 220280 (E.D. Pa. Apr. 29, 1997) ...................................19

*Frankhouser v. Clearfield Cty Career and Tech. Ctr.*,
   No. 3:18-cv-180, 2019 WL 1259570 (W.D. Pa. Mar. 19, 2019) ...........................................15

*Gabel v. Richards Spears Kibbe & Orbe, LLP*,
   615 F. Supp. 241 (S.D.N.Y. 2009) ......................................................................................19

*Garg v. Winterthur*,
   No. 05 Civ. 5870 (LTS), 2007 WL 136263 (S.D.N.Y. Jan. 18, 2007) .....................................6

*Gertz v. Temple Univ.*,
   661 A.2d 13 (Pa. Super. Ct. 1995) .......................................................................................19

*Gulf Ins. Co. v. Glassbrenner*,
   417 F.3d 353 (2d Cir. 2005)................................................................................................6

*Gym Door Repairs, Inc. v Young Equip. Sales, Inc.*,
   206 F. Supp. 3d 869 (S.D.N.Y. 2016)..............................................................................17, 18

*Highland CDO Opportunity Master Fund, L.P. v Citibank*,
   270 F. Supp. 3d 716 (S.D.N.Y. 2017)..................................................................................14

*Hoy v. Angelone*,
   720 A.2d 745 (Pa. Super. Ct. 1998).................................................................................15, 16

*Int'l Bus. Machs Corp. v. Liberty Mut. Ins. Co.*,
   363 F.3d 137 (2d Cir. 2004)..............................................................................................14

*Jenkins Brick Co. v. Bremer*,
   321 F. 3d 1366 (11th Cir. 2003) .........................................................................................6

*Jones v. Fox Rothschild LLP*,
   No. 19-cv-11573 (S.D.N.Y May 18, 2020) ...........................................................................9

*Jones v. Fox Rothschild LLP*,
   No. 19-cv-11573 (S.D.N.Y Dec. 19, 2019) ........................................................................8, 9

*Kalb, Voorhis & Co. v. Am./ Fin. Corp.*,
   8 F.3d 130 (2d Cir. 1993)..................................................................................................13

*Klein v. Metro. Child Servs., Inc.*,
   100 A.D.3d 708 (2d Dep't 2012) ........................................................................................15

*Kornegey v. City of Phila.*,
    299 F. Supp. 3d 675 (E.D. Pa. 2018) .................................................................15

*Krock v. Lipsay*,
    97 F.3d 640 (2d Cir. 1996).................................................................................13

*Luxexpress 2016 Corp. v. Gov't of Ukr.*,
    No. 15-CV-4880(VSB), 2018 WL 1626143 (S.D.N.Y. Mar. 30, 2018)...................7

*MacEntee v. IBM*,
    783 F. Supp. 2d 434 (S.D.N.Y. 2011).................................................................15

*MasterCard Int'l. Inc. v Nike, Inc.*,
    164 F. Supp. 3d 592 (S.D.N.Y 2016)............................................................13, 14

*Maverick Steel Co. LLC v. Dick Corp./Barton Malow*
    54 A.3d 352 (Pa. Super. Ct. 2012).....................................................................12

*Medicrea USA, Inc. v. K2M Spine, Inc.*,
    No. 17 Civ. 8677 (AT), 2018 WL 3407702 (S.D.N.Y. Feb. 7, 2018) .....................7

*Misek-Falkoff v. Keller*,
    153 A.D.2d 841 (2d Dep't 1989) .......................................................................16

*Pasqualini v MortgageIT, Inc.*,
    498 F. Supp. 2d 659 (S.D.N.Y. 2007).................................................................12

*Pedraglio Loli v. Citibank, Inc.*,
    No. 97 Civ. 2179 (LMM), 1997 WL 778750 (S.D.N.Y. Dec. 18, 1997) ...............12

*Price v. Phila. Elec. Co.*,
    790 F. Supp. 97 (E.D. Pa. 1992) .......................................................................19

*Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*,
    No. 04 Civ. 704 (RPP), 2005 WL 1214281 (S.D.N.Y. May 20, 2005) ................12

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
    53 F. Supp. 3d 705 (S.D.N.Y. 2014)..................................................................14

*Scialdone v. DeRosa*,
    148 A.D.3d 741 (2d Dep't 2017) .......................................................................16

*Seltzer v. Bayer*,
    272 A.D.2d 263 (1st Dep't 2000) ......................................................................16

*Spar, Inc. v. Info. Res. Inc.*,
    956 F.2d 392 (2d Cir. 1992)...........................................................................9, 10

*Stevens v. New York.*,
    691 F. Supp. 2d 392 (S.D.N.Y. 2009)......................................................................19

*Strickland v. Univ. of Scranton*,
    700 A.2d 979 (Pa. Super. Ct. 1997)....................................................................17

*Stuart v. Am. Cyanamid Co.*,
    158 F.3d 622 (2d Cir. 1998).................................................................................11

*Trehern v. OMI Corp.*,
    No. 98 Civ. 0242 RWS, 1999 WL 47303 (S.D.N.Y Feb. 1, 1999) .........................9

*Turley v. ISG Lackawanna, Inc.*,
    774 F.3d 140 (2d Cir. 2014)..............................................................................15

**Statutes and Rules**

28 U.S.C. § 1391(b)(2) ............................................................................................6, 7

28 U.S.C. § 1404(a) ......................................................................................................9

28 U.S.C. § 1406(a) ......................................................................................................6

Federal Rule of Civil Procedure 12(b)(3) ...................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ...................................................... *passim*

N.Y. C.P.L.R. § 202.................................................................................................2, 11

N.Y. Workers' Comp. Law § 11 ...............................................................................19

N.Y. Workers' Comp. Law § 29(6) ..........................................................................19

42 Pa. Cons. Stat. § 5524 ..........................................................................................12

77 Pa. Cons. Stat. § 481(a).........................................................................................19

**Other Authorities**

Alexander, Practice Commentary, McKinney's Cons Law of NY, 2019 Electronic
    Update, Civil Practice Law and Rules § 215.3 ...................................................12

Pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant CBS ("CBS" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint of Plaintiff Lauren Weingarten ("Plaintiff") filed August 31, 2020 (the "Amended Complaint" or "Am. Compl.").

## I.   **PRELIMINARY STATEMENT**

Despite well-settled law, Plaintiff attempts to bring a meritless case with tenuous connections to this venue.  Based on Plaintiff's Amended Complaint, there are compelling reasons to dismiss this case on multiple grounds: (1) venue in New York is improper, (2) the intentional tort claims are untimely, (3) the claims are not adequately pled and (4) the negligence claims are barred by the exclusivity provision of the applicable Workers' Compensation law. Thus, not only should this case be dismissed outright for improper venue under Rule 12(b)(3), this case should also be dismissed pursuant to Rule 12(b)(6) as Plaintiff is unable to state a claim under any applicable law.

Plaintiff, formerly a resident of Pennsylvania and currently a resident of North Carolina, has brought this case against Defendant CBS and against individual defendant Matt DeRoss, a resident of California, in the Southern District of New York, for alleged events that took place solely at and around her worksite in Pittsburgh, Pennsylvania.  Even accepting all allegations as true for the purposes of this motion, the Amended Complaint only contains scant and irrelevant references to New York.  These meager allegations do not provide the necessary support to establish that a substantial part of the events in question occurred in this District, as required by law to justify venue, and should result in the dismissal of this case.  Even after the undersigned notified Plaintiff that this venue was improper, Plaintiff still opted to file an Amended Complaint in this District rather than in the Western District of Pennsylvania, which was the sole location of the alleged events.

And, even if this Court is not inclined to dismiss on the basis of venue, Plaintiff's claims are not tenable and should be dismissed under Rule 12(b)(6).  New York's borrowing statute, C.P.L.R. § 202, exists to ensure that out-of-state plaintiffs, such as the Plaintiff in this action, are not rewarded for their attempts at forum shopping and requires the use of the shorter statute of limitations period out of the possible choices.  In this case, New York's statutory limitations period will apply rather than Pennsylvania's.  Thus, Plaintiff's claim for intentional infliction of emotional distress (Count II) is subject to a one-year statute of limitations and is untimely.  Her claim for intentional interference with prospective economic advantage (Count IV) is a disguised defamation claim and therefore subject to a one-year statute of limitations and untimely as well.

Moreover, Plaintiff's claims fail as a matter of law under both New York and Pennsylvania law.  Plaintiff's assertions are wholly insufficient to overcome the high bar for stating a claim for intentional infliction of emotional distress.  There are no allegations suggesting that CBS engaged in extreme or outrageous behavior or any of the other requisite elements necessary to state such a claim.  Similarly, her claim of intentional interference with prospective economic advantage is not supported by any allegations against CBS and is inadequately pled.

Additionally, Plaintiff's claims for negligent infliction of emotional distress (Count I) and negligent supervision and retention (Count III) are barred by the exclusivity provision of the Workers' Compensation laws in both New York and Pennsylvania, which preclude common law negligence claims by an employee against an employer, and should be dismissed.  Plaintiff's counsel has essentially conceded this point yet has not withdrawn the claims and therefore they are now unnecessarily pending in front of this Court.

## II.     FACTUAL BACKGROUND

As required by Rule 12(b)(6), Defendant's memorandum sets forth and assumes the truth of the factual allegations pled in the Amended Complaint solely for the purposes of this motion.

Plaintiff's claims arise out of her employment with Eye Productions, Inc. ("Eye"), an indirect subsidiary of ViacomCBS Inc., as an assistant to Executive Producer Craig Zobel ("Zobel") on the CBS All Access television series entitled "One Dollar."[1]  (Am. Compl. ¶ 9).  At all relevant times, Plaintiff resided in Pittsburgh, Pennsylvania and the series was filmed there. (Am. Compl. ¶ 9).  Plaintiff is now a resident of North Carolina.  (Am. Compl. ¶ 4).  She was employed by Eye from approximately January 8, 2018 to June 28, 2018.  (Am. Compl. ¶¶ 9, 40). Matt DeRoss ("DeRoss"), the other defendant in this matter and a California resident, worked on the series as an Executive Producer.  (Am. Compl. ¶ 6, 9; also Amended Complaint generally).

CBS has policies prohibiting discrimination and harassment.  (Am. Compl. ¶ 16). All crew members were required to attend a live one-hour mandatory CBS anti-harassment/anti-discrimination training in Pittsburgh and department heads and supervisors were required to complete a second hour of training online.  (Am. Compl. ¶ 17).  Plaintiff alleges that she complained about harassment at various times to individuals who worked for the show.  (Am. Compl. generally).

Plaintiff admits that she was involved in a verbal altercation with Sophia Lin on June 14, 2018 (the "Lin Incident"); the Lin Incident occurred in Pittsburgh.  (Am. Compl. ¶ 26; also Am. Compl. generally).  Plaintiff spoke with Marlene Baez ("Baez") of CBS' Human

---

[1] At all times relevant to the Amended Complaint, the indirect parent company of Eye was CBS Corporation, which is now known as ViacomCBS Inc., following the merger of Viacom Inc. with and into CBS Corporation on December 4, 2019, with CBS Corporation continuing as the surviving corporation, which has been renamed "ViacomCBS Inc."  CBS All Access is ViacomCBS's internet streaming platform that offers viewers original CBS and Viacom programming, CBS Sports productions, and content from CBS's and Viacom's programming library.

Resources department about the Lin Incident.  (Am. Compl. ¶¶ 30, 31).  Plaintiff also admits she

was involved in a verbal altercation with DeRoss on June 19, 2018 in which she told him to "go

fuck yourself" (the DeRoss incident"); the DeRoss Incident occurred in Pittsburgh.  (Am. Compl.

¶ 32; also Am. Compl. generally).  Plaintiff also spoke with Baez about the DeRoss Incident.

(Am. Compl. ¶ 36).  Baez conducted an investigation of the DeRoss Incident.  (Am. Compl.

¶ 37).  On June 28, 2018, CBS terminated Plaintiff's employment.  (Am. Compl. ¶ 40).  On July

30, 2018, Plaintiff received a termination letter from CBS.  (Am. Compl. ¶ 40).  Plaintiff alleges

that Zobel previously had asked Plaintiff to work on his next project with her and she accepted,

but she ultimately did not work with him following her termination.  (Am. Compl. ¶¶ 13, 44).

CBS subsequently contacted Plaintiff, post-termination, as part of an investigation

into allegations made by another former employee.  (Am. Compl. ¶¶ 46-47).  Plaintiff referred

CBS to her attorney and a series of communications took place between attorneys at CBS and

counsel for Plaintiff, culminating in a letter sent by CBS and received by counsel for Plaintiff on

January 3, 2019.  (Am. Compl. ¶¶ 48-51).

Additional Facts Specifically Relevant to Venue

Plaintiff filed her complaint on March 27, 2020.  (Dkt. 1).  After it was filed,

counsel for Plaintiff and counsel for CBS engaged in several conversations and correspondence.

(Declaration of Kevin B. Leblang ("Leblang Decl.") at ¶ 3).  As detailed in pre-motion

correspondence to Plaintiff's counsel, CBS's counsel pointed out the claims' significant lack of

connections to New York, stated that venue in this District was improper, articulated other

arguments as to why Plaintiff would not prevail on her claims and informed counsel that a

motion to dismiss would be forthcoming.  (Leblang Decl. Exh. B).  Plaintiff's counsel conceded

that venue in the Western District of Pennsylvania could be proper.  (Leblang Decl. Exh. C).

Nevertheless, Plaintiff filed an amended complaint on June 27, 2020, which dropped several of the claims, but maintained the tort actions in New York and added a few additional references to New York rather than moving the case to the appropriate district.  (Am. Compl. generally).  The Amended Complaint referenced in these papers, and filed on August 31, 2020, is identical to the prior Amended Complaint.

Several additional and important facts relevant to the venue analysis were not mentioned in the Amended Complaint.  Baez traveled to Pittsburgh following the DeRoss Incident and interviewed individuals about both that incident and the Lin Incident in Pittsburgh.  (Affidavit of Marlene Baez ("Baez Aff.") at ¶ 9).  Following the investigation, Baez spoke to Plaintiff on the phone.  (Baez Aff. ¶ 10).  She informed Plaintiff, who was in Pittsburgh at the time, that she was being terminated.  *Id.*  A letter was subsequently sent to Plaintiff at her address in Pittsburgh memorializing the findings of the investigations and the termination decision.  (Baez Aff. ¶ 10).

Rather than mentioning these key connections to Pittsburgh, Plaintiff makes allegations about a handful of times she contacted Human Resources in New York, including two telephone discussions with Baez, and a speculative allegation that she would have participated in post-production work in New York.  (Am. Compl. ¶¶ 30-31, 35, 41, 44).  This allegation is contradicted by Baez, who has actual knowledge of the relevant facts.  (*See* Baez Aff. ¶ 11).

III.   **ARGUMENT**

     A.   **The Amended Complaint Should Be Dismissed for Improper Venue**

Plaintiff's Amended Complaint is improperly filed in the Southern District of New York and should be dismissed under Rule 12(b)(3).  The federal venue statute, 28 U.S.C. § 1391(b)(2), provides that civil actions "may be brought in a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred." The burden is on

the plaintiff to establish that venue is proper. *Fedele v. Harris*, 18 F. Supp. 3d 309, 316

(E.D.N.Y. 2014) (citation omitted). Courts have the authority to dismiss a case that is filed

"laying venue in the wrong division or district" under 28 U.S.C. § 1406(a). In considering

motions to dismiss for improper venue, "[a] court may examine facts outside the complaint

[including affidavits and declarations] to determine whether venue is proper [and] must draw all

reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Garg v.

Winterthur*, No. 05 Civ. 5870 (LTS), 2007 WL 136263, at *1 (S.D.N.Y. Jan. 18, 2007).

Courts are advised to "take seriously the adjective 'substantial'", which means

that "for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must

have occurred in the district in question, even if other material events occurred elsewhere." *Gulf

Ins. Co. v. Glassbrenner*, 417 F.3d 353, 357 (2d Cir. 2005). "Only the events that directly give

rise to a claim are relevant. And of those places where the events have taken place, only those

locations hosting a substantial part of the events are to be considered." *Fedele*, 18 F. Supp. 3d at

317 (citing *Jenkins Brick Co. v. Bremer*, 321 F. 3d 1366, 1371 (11th Cir. 2003)).

Substantiality is to be "determined by assessing the overall nature of the

plaintiff's claims and the nature of the specific events or omissions in the forum, and not by

simply adding up the number of contacts." *Fedele*, 18 F. Supp. 3d at 316-17 (citing *Daniel v.

Am Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005)). The relevant question is where

the "events or omissions 'giving rise to' Plaintiffs' claims occurred." *Luxexpress 2016 Corp. v.

Gov't of Ukr.,* No. 15-CV-4880(VSB), 2018 WL 1626143, at *5, *6 (S.D.N.Y. Mar. 30,

2018)(granting motion to dismiss for improper venue because "virtually all of Defendants'

actions giving rise to Plaintiffs' claims occurred in Kiev, Ukraine."); *Assa Realty LLC v. Solution*

*Grp. Corp.*, No. 17-cv-0177 (KBF), 2017 WL 2241524, at *2 (S.D.N.Y. May 22, 2017)
(determining venue was not proper when "almost all (if not all) of the events allegedly giving
rise to the plaintiff's claims occurred in Florida"); *Medicrea USA, Inc. v. K2M Spine, Inc.,*
No. 17 Civ. 8677 (AT), 2018 WL 3407702, at *16 (S.D.N.Y. Feb. 7, 2018)(determining venue
was improper because "[a]lthough some of the events giving rise to claims against [Defendants]
occurred in New York, the Court finds that they 'substantial[ly]' took place in [another
District.]")

   Plaintiff's only support for venue being proper pursuant to 28 U.S.C. § 1391(b)(2)
is her assertion that "a substantial part of the events or omissions giving rise to the claims
asserted herein occurred here" (Am. Compl. ¶ 3), which is just a conclusory recitation of the
venue statute itself.  Aside from this statement, Plaintiff cannot point to any significant events
demonstrating that venue in New York is proper.  Rather, the events giving rise to the claims
only occurred in Pittsburgh, Pennsylvania.  Plaintiff was a resident of Pennsylvania during the
relevant time period and the conduct underlying the allegations occurred in Pittsburgh.  Her work
environment, which is the basis for the emotional distress claims (Counts I & II), was
exclusively in Pittsburgh and her claims for negligent supervision and retention (Count III) and
intentional interference with prospective economic advantage (Count IV) are based upon events
that took place in Pittsburgh.  The individually named defendant, a resident of California, was in
Pittsburgh at the time of all the actions at the base of Plaintiff's claims.

   The scant references to New York in the Amended Complaint accurately reflect
the minimal relationship to New York and are insufficient to meet the standard of substantiality
required under the law.  Moreover, the deficiencies regarding venue were identified for Plaintiff
prior to the filing of the Amended Complaint (Leblang Decl. ¶ 3, Exh. B) and even after refiling

with this knowledge, the allegations pertaining to any events or omissions in New York are negligible and irrelevant to the analysis.  The Amended Complaint does not, and cannot, allege that Plaintiff ever worked in New York during the course of her employment or was subject to occurrences in New York that would give rise to the claims made in this action.  A few telephone calls with a Human Resources representative in New York is simply not enough to rise to the level of activity that would justify venue in New York,  (Am. Compl. ¶ ¶ 30, 31, 35, 46), particularly where, as here, the Human Resources representative conducted the investigation where the relevant events took place—in Pittsburgh, Pennsylvania.  (Baez Aff. ¶ 9).

        Plaintiff's counsel was specifically informed on several occasions that venue in the Southern District of New York was improper, the reasons why venue was improper, and even effectively conceded that venue was improper, yet still opted to file the Amended Complaint in this District.  Moreover, Plaintiff's counsel has recently encountered this same issue and has gone through this exact process in a case with ties to New York that were equally weak, which resulted in a transfer to the District of New Jersey.  In *Jones v. Fox Rothschild LLP,* the plaintiff made allegations of discrimination and harassment against her former employer, Fox Rothschild LLP and one of its attorneys, in a complaint filed in the Southern District of New York. Complaint, *Jones v. Fox Rothschild LLP*, No. 19-cv-11573 (S.D.N.Y Dec. 19, 2019) (Dkt. 2). Defendants both separately moved for the case to be dismissed for improper venue under Rule 12(b)(3) or alternatively transferred to the District of New Jersey.  In his decision to transfer the case, Judge Alvin Hellerstein noted that the case included "serious allegations of sexual harassment (in New Jersey), attempted rape (in New Jersey), and potential failures of the staff of an office (located in New Jersey) to respond to a dangerous and abusive situation" and where the Complaint was "permeated by references to persons and conduct in New Jersey", the allegation

that one Defendant may have sent some improper text messages from New York is "far from enough to constitute a substantial part of these events."  Order Transferring Case, *Jones v. Fox Rothschild LLP*, No. 19-cv-11573 (S.D.N.Y May 18, 2020)(Leblang Decl., Exh. D).  Just as the text messages in *Jones* were insufficiently substantial to establish venue, the handful of alleged phone calls in this case made between Plaintiff in Pittsburgh and Human Resources in New York are insufficient for the purposes of establishing venue here.  As acknowledged in the Amended Complaint and described in the Baez Affidavit, the Plaintiff was located in Pittsburgh, the factual witnesses were based in Pittsburgh, the investigation was conducted in Pittsburgh, and the underlying events took place in Pittsburgh.

And, to the extent that Plaintiff argues the case should be transferred rather than dismissed, Plaintiff has already had an opportunity to do so in a timely manner while on notice of Defendant CBS's intent to move to dismiss for improper venue and chose not to.  When a plaintiff seeks to transfer his or her own case under 28 U.S.C. § 1404(a), the "threshold question . . . is whether a plaintiff has shown that a change in circumstance since the complaint was filed warrants a transfer."  *Trehern v. OMI Corp.*, No. 98 Civ. 0242 RWS, 1999 WL 47303, at *3 (S.D.N.Y Feb. 1, 1999).  Courts have denied motions for transfer by plaintiffs when the reason the "forum is no longer acceptable to plaintiff [is] due to plaintiff's lack of diligence."  *Id.*  *See Spar, Inc. v. Info. Res. Inc.*, 956 F.2d 392, 394 (2d Cir. 1992) (affirming decision that denied a transfer because it would "reward plaintiffs for their lack of diligence in choosing a proper forum and thus would not be in the interest of justice" when the reason for the transfer was to avoid a statute of limitations defect.)  Not only did Plaintiff have ample opportunity to consider her claims and research the appropriate venue, she was also provided the pertinent case law as part of this Court's pre-motion rules; Plaintiff could have refiled in a more appropriate venue and

opted not to.  Justice does not require that such a plaintiff "should be spared the consequences of

their own failure to pursue their claim." *Id.* at 395.  Plaintiff's strategic decision to initially file in

the wrong district in an effort to presumably gain some benefit, and then to double down on that

decision after an opportunity to refile, has resulted in unnecessary work and expense for

Defendant; Plaintiff should not be rewarded with a transfer that enables her to escape potential

temporal bars to her claims.

> **B.**     **Plaintiff's State Law Claims Should Be Dismissed**

If this Court chooses to not dismiss the case under Rule 12(b)(3), Defendant

respectfully requests that the Amended Complaint should be evaluated and dismissed under Rule

12(b)(6), rather than transferred, as the state law claims are meritless.  Rule 12(b)(6) requires

dismissal of a complaint where a plaintiff has "fail[ed] to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).  Legal conclusions "must be supported by factual allegations"

in order to survive dismissal under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007) (citations omitted).  "A claim has facial plausibility" only "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550

U.S. at 556-57).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do . . . .  Factual allegations must be enough to raise a right to relief

above the speculative level. . . on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).

Moreover, it may not be assumed that the plaintiff can prove facts that it has not alleged.

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### 1.    Plaintiff's Claims are Time Barred (Counts II and IV)

New York's borrowing statute, C.P.L.R. § 202, specifically guards against the type of forum shopping undertaken here by mandating use of the shortest statute of limitations available and is applicable because Plaintiff chose to bring her case in New York.  "Under C.P.L.R. §202, when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period . . . of either: (1) New York; or (2) the state where the cause of action accrued."  *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998).  As the Plaintiff is a nonresident and the claims accrued in Pennsylvania, the appropriate analysis is whether New York or Pennsylvania has a shorter statute of limitations for the relevant claims.

The cause of action against CBS for intentional infliction of emotional distress ("IIED") (Count II), taking all allegations pled as true for purposes of a motion to dismiss, accrued at the absolute latest on January 3, 2019, which is the date her counsel received correspondence from attorneys at CBS.  The original complaint was filed on March 27, 2020.  Under New York law, "a cause of action for the intentional infliction of emotional distress is governed by the one-year period of limitations in CPLR 215(3)."  *Berlin v. JetBlue Airways Corp.*, 436 F. Supp. 3d 550, 565 (E.D.N.Y 2020)(citing N.Y. C.P.L.R. § 215 Commentary).  Pennsylvania has a two-year statute of limitations for IIED.  See 42 Pa. Cons. Stat. § 5524.  The New York statute of limitations governs the claim, as it is the shorter of the two periods, and the claim is clearly untimely due to its accrual date.

Similarly, Count IV against CBS for intentional interference with prospective economic advantage is also untimely.[2]  Plaintiff does not specifically allege a date in association with this count but, taking all pled allegations as true for the purposes of this motion, the claim accrued on June 28, 2018 (the date of her termination).  In New York, "the statute of limitations for a cause of action alleging tortious interference with . . . prospective economic advantage is three years." *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 Civ. 704 (RPP), 2005 WL 1214281, at \*15 (S.D.N.Y. May 20, 2005) (citations omitted).  However, where the interference consists of alleged tortious conduct that is in essence a claim for defamation, the one-year period shall apply.  "[A] plaintiff is not automatically entitled to the luxury of the three-year statute of limitations, as 'New York Courts have consistently ruled that a claim which is ostensibly based upon the intentional torts of interference with advantageous or contractual relations, but which alleges injury to reputation, is a disguised defamation claim and subject to a one-year limitations period under CPLR 215(3).'" *Pasqualini v MortgageIT, Inc.*, 498 F. Supp. 2d 659, 670 (S.D.N.Y. 2007) (citing *Pedraglio Loli v. Citibank, Inc.*, No. 97 Civ. 2179 (LMM), 1997 WL 778750, at \*4 (S.D.N.Y. Dec. 18, 1997); *see also* Alexander, Practice Commentary, McKinney's Cons Law of NY, 2019 Electronic Update, Civil Practice Law and Rules § 215.3 ("Any form of alleged tort that asserts injury to reputation, regardless of how it is named in the complaint, is to be treated, for purpose of the statute of limitations, as a defamation claim."); *Demas v. Levitsky*, 291 A.D.2d 653, 658 (3d Dep't 2002)(holding that one-year statute of limitations should apply to claim for tortious interference with prospective economic relations

---

[2] As discussed *infra*, Pennsylvania does not recognize a claim for intentional interference with prospective economic advantage.  The similar claim of tortious interference with prospective business relations under Pennsylvania law also applies a one-year statute of limitations period to such claims if they are based on allegations of defamation. *Maverick Steel Co. LLC v. Dick Corp./Barton Malow*, 54 A.3d 352, 355 (Pa. Super. Ct. 2012).

"based on the contention that plaintiff was deprived of professional opportunities because of the alleged injury to her professional reputation.")

Plaintiff does not assert any specific allegations against CBS in support of this claim.  The allegations asserted against DeRoss for making "false statements of fact" (Am. Compl. ¶ 43) and "malicious interference through his actions and words" (Am. Compl. ¶ 44) that were intended to "cause [Plaintiff] professional harm and to damage her career" (Am. Compl. ¶ 43) are rooted entirely in defamation.  Plaintiff should not be rewarded with a three-year statute of limitations for disguising her defamation claims.  The injury alleged is injury to reputation and, as such, the one-year statutory period will apply and the claim is barred.

## 2.    Plaintiff Does Not State a Claim Under Applicable Tort Law

Not only should the intentional tort claims be dismissed on statute of limitations grounds, but they also fail to state a claim under New York and Pennsylvania law and should be dismissed accordingly.  New York courts use an "interest-analysis approach" in determining what state's law applies to a tort claim.  This requires that "'the law of the jurisdiction having the greatest interest in the litigation . . . be applied.'"  *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (quoting *Kalb, Voorhis & Co. v. Am./Fin. Corp.,* 8 F.3d 130, 132 (2d Cir. 1993).  "This 'interests' analysis requires an evaluation of . . . 'the significant contacts' and . . . [t]he parties' domiciles and locus of the tort generally comprise the significant contacts."  *MasterCard Int'l. Inc. v Nike, Inc*., 164 F. Supp. 3d 592, 605 (S.D.N.Y 2016) (citing *Krock v. Lipsay*, 97 F.3d 640, 645-646 (2d Cir. 1996)).  Alleged torts are deemed to occur "in the place where the injury was inflicted, which is generally where the plaintiffs are located."  *Highland CDO Opportunity Master Fund, L.P. v Citibank*, 270 F. Supp. 3d 716, 725 (S.D.N.Y. 2017).  "Where, as here, the applicable laws are conducting regulating, 'the locus of the tort will almost always be

determinative[.] '" *MasterCard Intl.*, 164 F. Supp. 3d at 605 (internal citations and quotations omitted).  In this matter, the place of any alleged injury is Pennsylvania.

This analysis is unnecessary if there is not a conflict and "in the absence of substantive difference . . . a New York court will dispense with [the] choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *Id.* at 604-605 (citing *Int'l Bus. Machs Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004)(internal citations omitted).

a.    <u>Intentional Infliction of Emotional Distress</u>

A claim of intentional infliction of emotional distress has similar elements under both New York and Pennsylvania law.  Under New York law, a plaintiff must plead and prove four elements to recover under IIED: "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."  *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014).  New York courts have found liability for IIED "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.*  "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress," and "defamatory statements generally cannot constitute the extreme and outrageous behavior required for an intentional infliction of emotional distress claim."  *Id.*

"Conclusory assertions" about the requisite elements for the claim are "insufficient to set forth a cause of action sounding in the intentional infliction of emotional distress."  *Klein v. Metro. Child Servs., Inc.*, 100 A.D.3d 708, 711 (2d Dep't 2012); *see also MacEntee v. IBM*, 783 F. Supp. 2d 434, 447-48 (S.D.N.Y. 2011) (plaintiff's conclusory

allegation that "defendant's conduct caused her to become 'severely upset'" was insufficient to support IIED claim).  Not only is it an extremely challenging claim to successfully plead and is therefore a claim of last resort, but the claim is also not sustainable where the conduct "falls well within the ambit of other traditional tort liability."  *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 159 (2d Cir. 2014)(citing *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58 (1978).  New York courts have specifically applied this principle to "exclude claims for intentional infliction where a cause of action for defamation may be asserted on the facts of the case."  *Turley*, 774 F.3d at 159 (citations omitted).

Under Pennsylvania law, an action for IIED requires a plaintiff to show that (1) the conduct is extreme; (2) the conduct is intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe.  *Kornegey v. City of Phila.*, 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018).  To state a claim for IIED in Pennsylvania, a plaintiff must demonstrate that the defendant's conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society."  *Id*.  "[I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."  *Frankhouser v. Clearfield Cty Career and Tech. Ctr.,*No. 3:18-cv-180, 2019 WL 1259570, at *16 (W.D. Pa. Mar. 19, 2019) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. Super. Ct. 1998)(quotations omitted).  The "'requisite intention which one must display for liability to be imposed is knowledge on the part of the actor that severe emotional distress is substantially certain to be produced.'" *Doe v. Plum Borough Sch. Dist.*, No. 2:17-cv-00032, 2017 WL 3492542, at *11 (W.D. Pa. Aug. 15,

2017)(quoting *Bryan v. Erie Cty. Office of Children & Youth*, 861 F.Supp. 2d 553, 585 (W.D. Pa. 2012)).

Plaintiff's allegations do not come close to the level of extremity and outrageousness required to sustain such a claim under either New York or Pennsylvania law. *See e.g., Seltzer v. Bayer,* 272 A.D.2d 263, 264-265 (1st Dep't 2000) (holding that facts to support plaintiff's IIED claim, even if taken as true, did not constitute sufficiently outrageous conduct where plaintiff alleged that defendant dumped a pile of cement in front of his house, threw eggs on his front steps, tossed lit cigarettes into his backyard, and threatened to paint swastikas on plaintiff's house); *Scialdone v. DeRosa,* 148 A.D.3d 741, 742 (2d Dep't 2017) (court ruled statements calling plaintiff "quixotic," "self-absorbed," "narcissistic," "delusional," and referring to him as a "paranoid pompous ass" were not so extreme and outrageous as to state a claim for intentional infliction of emotional distress.); *Misek-Falkoff v. Keller*, 153 A.D.2d 841 (2d Dep't 1989) (employee's statement in e-mail to co-workers that a co-employee had criminally assaulted him, among other things, did not exceed "all bounds usually tolerated by decent society" and cause of action for intentional infliction of emotional distress dismissed); *Hoy v. Angelone*, 720 A.2d 745, 754-55 (Pa. Super. Ct. 1998)(finding that highly offensive and unacceptable sexual harassment, including sexual propositions, off-color jokes, and the posting of a sexually suggestive picture, was unacceptable but "not so extremely outrageous . . . [as to] allow for recovery under this most limited of torts.").

Plaintiff's allegations also do not provide a basis for claiming that CBS's conduct was intentional or reckless in any way or caused the alleged severe emotional distress.  Plaintiff herself specifically alleges that CBS required all crew members to attend an Anti-Harassment/Anti-Discrimination training with Department heads and supervisors were required

- 16 -

to complete a second hour.  (Am. Compl. ¶ 17).  This fact undercuts Plaintiff's claim that CBS

failed to have proper safety practices in place.  Further, when Plaintiff contacted Human

Resources about her workplace concerns, the incident was swiftly and properly investigated.

And lastly, CBS acted appropriately by sending Plaintiff's counsel a list of questions about a

report involving Plaintiff to facilitate an investigation.  None of the aforementioned conduct by

CBS scratches the surface of the extreme or outrageous conduct needed to support an IIED claim

under New York or Pennsylvania law.

> b.    <u>Intentional Interference with Prospective Economic Advantage</u>

The claim of intentional interference with prospective economic advantage should

also be dismissed.[3]  "Under New York law, to state a claim for tortious interference with

prospective economic advantage, the plaintiff must allege that '(1) it had a business relationship

with a third party; (2) the defendant knew of that relationship and intentionally interfered with it;

(3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and

(4) the defendant's interference caused injury to the relationship.'"  *Gym Door Repairs, Inc. v*

*Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 907-08 (S.D.N.Y. 2016)(citations omitted).  In

the case of tortious interference with prospective economic advantage the "defendant must target

some activities directed toward the third party and convince the third party not to enter into a

business relationship with the plaintiff."  *Id.* at 908.  Additionally, the "plaintiff must show . . .

culpable conduct on the part of the defendant."  *Id.* (citing *Carvel Corp. v. Noonan*, 350 F.3d 6

---

[3] Pennsylvania does not specifically recognize intentional interference with prospective economic advantage but has a similar tort of tortious interference with prospective contractual relations.  In Pennsylvania, a cause of action for tortious interference with contractual relations contains four elements: "(1) the existence of a contractual, or a prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997)).

(2d Cir. 2003)).  "[A]s a general rule," in order to satisfy the third element of tortious

interference with business relations, "the defendant's conduct must amount to a crime or an

independent tort."  *Id.*

        The allegations in the Amended Complaint do not support such a claim against

CBS.  Plaintiff identifies her alleged opportunity for working with Zobel on a subsequent

production as the economic relationship interfered with but she does not make any specific

allegations regarding the conduct of CBS on this count – all of the allegations pertain to DeRoss.

There are no allegations that CBS convinced Zobel not to enter into a future business

relationship with Plaintiff, let alone acted in in a criminal or independently tortious manner; in

fact, the Amended Complaint does not even allege any direct connection between DeRoss's

alleged actions and Plaintiff's purported future work with Zobel.  Moreover, there is no evidence

to suggest that CBS knew of this purported business relationship and the Amended Complaint

does not allege that CBS was ever aware of this supposed relationship.  The claim is

insufficiently pled and should be dismissed.

### 3.    The Exclusivity Provision of Both New York's and Pennsylvania's Workers' Compensation Laws Precludes the Assertion of Many of Plaintiff's Claims

        Plaintiff's negligence claims will not survive under the law of either jurisdiction

due to relevant Workers' Compensation Laws in each state and Plaintiff's intentional tort claims

will fail under Pennsylvania law as well.  Common law negligence claims under New York law

are precluded by the "exclusive remedy provisions of New York's Workers' Compensation

statute."  *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001)(citing N.Y. Workers'

Comp. Law § 29(6), 11).  "It is well settled within the Second Circuit that 'common law

negligence claims are barred by the New York [ ] Workers' Compensation Law.'"  *Corrado v.*

*N.Y. Unified Court System*, 163 F. Supp. 3d 1, 26 (E.D.N.Y 2016) (citing *D'Annunzio v. Ayken,*

*Inc.*, 25 F. Supp. 3d 281, 294 (E.D.N.Y 2014)).  In New York, "a plaintiff cannot bring a claim

of negligent infliction of emotional distress against h[er] employer."  *Stevens v. New York.*, 691

F. Supp. 2d 392, 397 (S.D.N.Y. 2009); *see also Gabel v. Richards Spears Kibbe & Orbe, LLP*,

615 F. Supp. 241, 243 (S.D.N.Y. 2009).  Similarly, "negligent retention and supervision claims"

are also barred by the exclusivity remedy provisions of the Workers' Compensation statute.

*Ferris*, 277 F.3d at 137-138; *Corrado*, 163 F. Supp. 3d at 26 (dismissing claim for negligent

supervision and retention because it is "preempted by the New York Workers' Compensation

Law.")

       Similarly, in Pennsylvania, the Worker's Compensation Act ("WCA") provides

that "[t]he liability of an employer under this act shall be exclusive and in place of any and all

other liability to such employees. . . ."  77 Pa. Cons. Stat. § 481(a).  In most cases, the WCA is

the exclusive remedy of an employee for an injury arising in the course of employment. *Price v.

Phila. Elec. Co*., 790 F. Supp. 97, 99 (E.D. Pa. 1992).  "Thus, an injured employee cannot

maintain a tort action against his or her employer if the injury is compensable under the

provisions of the Act*." Gertz v. Temple Univ.*, 661 A.2d 13, 15 (Pa. Super. Ct. 1995).

Pennsylvania courts have held the exclusivity provision bars negligence claims and bars many

intentional tort claims.  *Fieni v. Pocopson Home*, Civil Action No. 96-5343, 1997 WL 220280, at

*6 (E.D. Pa. Apr. 29, 1997).

       The law of both jurisdictions makes clear that Plaintiff's negligence claims will be

dismissed and Plaintiff's tort claims will be dismissed under Pennsylvania law also.  In fact,

Plaintiff's counsel effectively conceded this in pre-motion correspondence by not addressing

Defendant's argument on this issue at all and then stating that Plaintiff "will be able to pursue

claims for intentional infliction of emotional distress and tortious interference with prospective

contractual relations against CBS."  (Leblang Decl. Exh. C).  This silence on the negligence claims speaks volumes about their merits.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above and pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, the Amended Complaint should be dismissed for improper venue.  If the Court should decide in its discretion to not dismiss the Amended Complaint on these grounds, then Defendant respectfully requests to dismiss the claims under Rule 12(b)(6), as set forth above.

Dated: September 4, 2020

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:   /s/ Kevin B. Leblang

Kevin B. Leblang, Esq.
Amelia B. Munger, Esq.

1177 Avenue of the Americas
New York, New York 10036
Phone: (212) 715-9100
Fax: 212-715-8000
kleblang@kramerlevin.com
amunger@kramerlevin.com

*Attorneys for Defendant*